IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LYNN MARLIN WALKER,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>    Defendant. | Civil Action No. 08-613<br>Judge Lancaster |

**MEMORANDUM OPINION AND ORDER OF COURT**

Gary L. Lancaster,
District Judge                           April ___, 2009

Plaintiff Lynn Marlin Walker ("Walker") applied for disability insurance benefits ("DIB") under Title II of the Social Security Act [42 U.S.C. §§ 401-433] on December 1, 2004, alleging disability as of September 15, 2000. (R. at 14). This claim was denied by the state agency on April 5, 2005. (R. at 30). Walker filed a timely request for an administrative hearing. (R. at 35). On November 14, 2006, an administrative hearing was held in Latrobe, Pennsylvania, before Administrative Law Judge Raymond J. Zadzilko (the "ALJ"). (R. at 166). In a decision dated April 23, 2007, the ALJ determined that Walker was not entitled to DIB. (R. at 11-18). The Appeals Council denied Walker's request for review on February 26, 2008, thereby making the ALJ's decision the final decision of the Commissioner of

Social Security ("Commissioner") in this case. (R. at 4).

Walker subsequently commenced this action against the Commissioner, seeking judicial review of the ALJ's decision in accordance with 42 U.S.C. § 405(g). Although his complaint was filed within the requisite sixty-day limitations period established by § 405(g), it was accompanied by neither the required filing fee nor a request for leave to proceed *in forma pauperis*. Walker's request for leave to proceed *in forma pauperis* was not filed until after the expiration of the limitations period. On July 28, 2008, the Commissioner filed a motion to dismiss Walker's complaint, contending that the action was barred by the statute of limitations. (Doc. No. 4). The Court denied this motion on October 24, 2008, holding that the action had been "commenced" as of the date of the filing of the complaint, even though leave to proceed *in forma pauperis* had not been granted until later. (Doc. No. 9); *McDowell v. Delaware State Police*, 88 F.3d 188, 191 (3d Cir. 1996); *Rodgers v. Bowen*, 790 F.2d 1550, 1551-1552 (11th Cir. 1986). Walker and the Commissioner proceeded to file motions for summary judgment on December 18, 2008, and January 20, 2009, respectively. (Doc. Nos. 13 & 15). These motions are the subject of this memorandum opinion.

In order to be eligible for DIB, a claimant must be insured under Title II. The applicable statutory provisions are codified

at 42 U.S.C. § 423(c)(1), which provides:

> (1) An individual shall be insured for disability insurance benefits in any month if--
> (A) he would have been a fully insured individual (as defined in section 214 [42 U.S.C. § 414] had he attained age 62 and filed application for benefits under section 202(a) [42 U.S.C. § 402(a)] on the first day of such month, and
> (B)(i) he had not less than 20 quarters of coverage during the 40-quarter period which ends with the quarter in which such month occurred, or
> (ii) if such month ends before the quarter in which he attains (or would attain) age 31, not less than one-half (and not less than 6) of the quarters during the period ending with the quarter in which such month occurred and beginning after he attained the age of 21 were quarters of coverage, or (if the number of quarters in such period is less than 12) not less than 6 of the quarters in the 12-quarter period ending with such quarter were quarters of coverage, or
> (iii) in the case of an individual (not otherwise insured under clause (i)) who, by reason of section 216(i)(3)(B)(ii) [42 U.S.C. § 416(i)(3)(B)(ii)], had a prior period of disability that began during a period before the quarter in which he or she attained age 31, not less than one-half of the quarters beginning after such individual attained age 21 and ending with the quarter in which such month occurs are quarters of coverage, or (if the number of quarters in such period is less than 12) not less than 6 of the quarters in the 12-quarter period ending with such quarter are quarters of coverage;
> except that the provisions of subparagraph (B) of this paragraph shall not apply in the case of an individual who is blind (within the meaning of "blindness" as defined in section 216(i)(1) [42 U.S.C. § 416(i)(1)]). For purposes of subparagraph (B) of this paragraph, when the number of quarters in any period is an odd number, such number shall be reduced by one, and a quarter shall not be counted as part of any period if any part of such quarter was included in a period of disability unless such quarter was a quarter of coverage.

42 U.S.C. § 423(c)(1). The Commissioner has promulgated

regulations to implement the insured status requirements of § 423(c)(1). 20 C.F.R. § 404.130. In his decision, the ALJ determined that Walker had been insured only through September 30, 1978, unless he could establish the existence of statutory blindness, in which case he would be insured through September 30, 2009. (R. at 15). Because Walker was unable to establish that he was statutorily blind, the ALJ concluded that he was ineligible for DIB. (R. at 17).

In determining that Walker was not statutorily blind, the ALJ evaluated his visual impairment under Listings 2.02 and 2.03A, which are found in 20 C.F.R. Pt. 404, Subpart P, Appendix 1 (the "Listing of Impairments"). Walker's impairment did not meet or *medically* equal either of these listed impairments. (R. at 15-17). In order for a claimant to qualify for benefits by showing that his or her unlisted impairment (or combination of impairments) is "equivalent" to a listed impairment, he or she "must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990)(emphasis in original). A claimant cannot qualify for benefits under an equivalence theory merely by showing that the overall *functional* impact of his or her unlisted impairment (or combination of impairments) is as severe as that of a listed impairment. *Id*.

The issue before the Court is quite narrow, since Walker

4

concedes that the ALJ correctly determined that his visual impairment did not meet or *medically* equal a listed impairment. (Doc. No. 14 at 9). Walker contends that it would have been "more appropriate" for the ALJ to consider whether his visual impairment was *functionally* equivalent to a listed impairment. (*Id.*). He acknowledges that no judicial decisions support his position, but he nevertheless argues for a "change" from the standard of "medical equivalence" to a new standard of "functional equivalence." (*Id.* at 10). Walker evidently believes that he is *functionally* blind even though he is not *medically* blind.

Walker's argument is based on the fundamentally flawed notion that this Court somehow has the authority to "change" the law. As an Article III tribunal created by Congress, this Court's role is limited to the interpretation and application of *written* statutory provisions enacted by the people's elected representatives. *Board of Regents v. Roth*, 408 U.S. 564, 579 (1972)("For it is a written Constitution that we apply. Our role is confined to interpretation of that Constitution."). It is to that *written* law which the Court now turns.

The parties evidently agree that Walker cannot establish his eligibility for DIB without demonstrating the existence of statutory blindness. The relevant statutory language provides that the insured status requirements of § 423(c)(1)(B) "shall not

5

apply in the case of an individual who is blind (within the meaning of 'blindness' as defined in section 216(i)(1) [42 U.S.C. § 416(i)(1)])." 42 U.S.C. § 423(c)(1)(B). The term "blindness" is defined as "central visual acuity of 20/200 or less in the better eye with the use of a correcting lens." 42 U.S.C. § 416(i)(1). The statutory definition further provides that "[a]n eye which is accompanied by a limitation in the fields of vision such that the widest diameter of the visual field subtends an angle no greater than 20 degrees shall be considered for purposes of this paragraph as having a central visual acuity of 20/200 or less." *Id.* The Commissioner's regulations, including Listings 2.02 and 2.03, mirror the definition of "blindness" found in the statute. 20 C.F.R. § 404.1581; 20 C.F.R. Pt. 404, Subpart P, Appendix 1, Listings 2.02 & 2.03.

As the plain language of the statutory definition makes clear, whether a claimant is "blind" is determined by reference to his or her "better eye." 42 U.S.C. § 416(i)(1). The evidence of record indicates that Walker is blind in his left eye. (R. at 185). Nevertheless, Walker testified at the hearing that the vision in his right eye was of a sufficient quality to enable him to operate a motor vehicle or read a newspaper. (R. at 170-171). He even stated that he could drive at night. (R. at 194-195). In response to a question posed by the ALJ, Walker testified that his right eye was often strained because of his inability to see

out of his left eye. (R. at 200). In any event, however, there is no indication in the record that the vision in his right eye is sufficiently impaired to enable him to qualify as "blind" within the meaning of the statute. (R. at 15-17).

Walker essentially invites the Court to ignore the statutory definition of "blindness," and to impose an alternative definition on the Commissioner through judicial fiat. (Doc. No. 14 at 10). Addressing this very issue in *Adams v. Bowen*, 872 F.2d 926, 928 (9th Cir. 1989), the United States Court of Appeals for the Ninth Circuit declared that "[b]ecause the language of the statute is clear, the definition of blindness should be read and applied literally." Walker cites to no authority which contradicts the holding in *Adams*. Indeed, he concedes that no such authority exists. (Doc. No. 14 at 10). There is no reason for this Court to reject the holding in *Adams*. After all, that holding was based precisely on the same statutory language that is at issue in this case. *Adams*, 872 F.2d at 928 ("Nothing in the legislative history of the Social Security Amendments of 1967, including Section 416(i)(1)(B), suggests that Congress intended anything but a narrow reading of the statute's unambiguous language."). Where Congress specifically defines a term used within the language of a statute, the term must be construed in accordance with its statutory definition. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 98-99 (2003).

Walker concedes that he is not "blind" within the meaning of the Social Security Act. (Doc. No. 14 at 9-11). He does not dispute the ALJ's determination that he was ineligible for DIB absent a showing of statutory blindness. No further inquiry is necessary. If Walker believes that the definition of the term "blindness" should be changed to incorporate a functional equivalence standard, he should express his view to members of Congress. The Court has no power to "change" a statutory definition.

Accordingly, the motion for summary judgment filed by Walker will be denied, and the motion for summary judgment filed by the Commissioner will be granted.

AND NOW, this 7th day of April, 2009, IT IS HEREBY ORDERED that Walker's motion for summary judgment (Doc. No. 13) is DENIED, and that the Commissioner's motion for summary judgment (Doc. No. 15) is GRANTED. Pursuant to the authority vested in this Court by the fourth sentence of § 405(g), the administrative decision made by the Commissioner in this case is hereby AFFIRMED.

BY THE COURT:

Gary L. Lancaster,
United States District Judge

cc: All counsel of record